I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. And particularly the audience. For a couple of years, the audience has been sparse because of the pandemic rules. But it's good to have all of you here. And then Judge Heitens and I are Judge Leiden from South Carolina, sitting by designation. We have four interesting cases. The first, number 21-2392, Alive Church v. Prince William County, Virginia. Mr. Cisney, good to have you here, sir. Thank you, Your Honor. Benjamin Cisney Good morning. May it please the Court, my name is Benjamin Cisney. I represent the appellant, Alive Church. This is a case about a church attempting to use and worship on its property on as favorable, equal terms as farm wineries and limited license breweries. And the county itself has determined that the church's planned use on that land is, and I quote, bona fide agricultural. The county itself determined that the church's use is consistent with the county's legitimate purpose and interest in preserving the nature and the character of agricultural land. This lawful alternative route was a suggestion of the county's own zoning administrator. When the pastor asked her in May of 2020, how do we get the same beneficial treatment that they, the farm wineries, receive in using their land? Can I ask you about that assurance point, which you make in your briefs as well? Is that an estoppel argument that you're making? I'm just trying to understand the statement, they told us this would be okay, and then they told us that this wouldn't be okay, and that's a point you're making about what you think is the correct construction of the ordinance. Your Honor, I see the resemblance to estoppel, and I understand that, but maybe even more than estoppel per se is this is the voice of the county. This is not just a staffer or somebody saying, hey, maybe we could do this. It's the voice of one person. I'm sorry, Your Honor. It's the voice of a person. That's correct. The county didn't have a meeting of the county council or county commission or anything like that and take a vote to say that this is what the position was, did they? I would assume, Your Honor, it's correct, but that one person- The one person spoke, okay? We hear these congressmen and administration officials talking on TV all the time. It'd be pretty hard to hold the government to what all they say. I understand the court's point, Your Honor, but that one person in this case was the zoning administrator, and that person had the authority to issue the relevant zoning determination. He's the zoning administrator of Prince William County? Yes, Your Honor. Is there a board? Prince William County has a board. So there's a board that he reports to or speaks for or something? The way they're set up, I don't know how Virginia exactly set up, but I'm sort of familiar with West Virginia, and most everything in West Virginia is drawn from Virginia. Who did this fellow report to? I would presume, Your Honor, that the zoning administrator would report in some capacity to the county board. I would assume that the county board would have authority on at least certain things, but even still, Your Honor, the zoning administrator certainly had her own authority, and she was the face and the voice of the county to the live church. Your representation here is what she said binds Prince William County. I'm sorry, Your Honor? Your representation is that what the zoning administrator says, verbalizes, binds the county. Yes, Your Honor, and at least insofar as here, it was not contrary to some written law or code or policy. This appears to be in the area where a zoning administrator may have deference or interpretation of leeway. I think this is implicit in what we've been saying so far, but am I correct in saying that you can't cite a provision of the Virginia code that says what you're just claiming about the authority of a zoning administrator? I cannot cite a provision of the Prince William County ordinances or code that expressly vests her with the authority that I believe that we're discussing. Can I ask you a different question? Am I correct? I mean, I know we're on a 12b6, and so there's facts that we just don't know. I guess I'll phrase it this way. Does the complaint allege whether your client ever sought a temporary activity permit or explain if it did not, why it did not? As the allegations go, Your Honor, part of the discussion that the pastor had with the zoning administrator was the idea was to receive as beneficial treatment as the farm wineries did, which had, at least at the time, less restrictive TAP or temporary activity permits than other agritourism uses. Sure. I guess, but as I read the code, it says, in general, you have to be agricultural to have a gathering or to do stuff. Or you can get a special use permit, which is discussed extensively in the complaint and the explanations of why your client is not in a position to fulfill the requirements of that. But it also says the temporary activity permit. And I didn't see anything in the complaint about whether your client ever asked for a temporary activity permit. Is that correct? I don't believe that my client ever did ask for a temporary activity permit. And one of the reasons that that was the case is that the temporary activity permits are more restrictive. There are limitations on the number that can be requested, I believe, on how frequently they can be requested. Yeah, I thought I saw something about how often you can ask for them. So, okay. So, part of the alternative route here, part of that goal was to receive as beneficial treatment as the farm wineries, which weren't subject to as restrictive of TAP requirements. Can I ask you about that? So, let's skip all the way to the end and say that we decided that your farm wineries can only have gatherings of up to 150 people, but your complaint alleges your church has 250 members. So, how is that consistent with as favorable of a treatment? So, at the outset, Your Honor, a number of the church's members are still attending remotely. And I would speculate that part of the reason is still recovering from COVID. And part of it is because they're still meeting at a school and the facilities have certain limitations because they're meeting at a school. In the event of requirement of exceeding 150, my client would have multiple services as many churches do. So, at absolute most, you would say that your claim is to get the same treatment as farm wineries, you would get an injunction that says you can have up to be equal treatment to the farm wineries. And however that manifested in the particular applicable codes, equal treatment as the farm wineries. Who are you going to be compared to? I'm sorry, who should we be compared to? Who will you be compared to? He said equal treatment. What's the comparator? The agricultural agritourism uses, in particular, the farm winery is a particular status, a particular type of agritourism that can occur on bona fide agricultural land. There are a number of farm wineries and limited license breweries in the county on agricultural land. And those events, whether they qualify as a special event, as a term of art under the code, or just a Friday night with live music by the bonfire, those farm wineries have regular activities that are in all relevant respects the same as what the church plans to do on that agricultural land until it's able to execute on a special use permit. Can I ask you, so we decided the case earlier this versus Montgomery County, and we said that in deciding the thing that Judge King was raising, that the question is whether you're similarly situated with regard to the purpose of the underlying regulation. How is this church similarly situated to a farm winery when it comes to the underlying purpose of the regulation, which I think Canaan Christian Church says is the relevant question for us? I mean, I suspect you may not agree with that standard, but we have adopted that as the standard. I actually do agree with that statement, Your Honor, and that this articulation of that test and the analysis actually supports our case. You say that the Canaan Church opinion supports you? I thought you had to figure out a way to get around it. There are other aspects of the decision that it will, insofar as it affirmed a summary judgment ruling of the lower court, of the district court, and but a couple of things that I'd like to point out to answer Your Honor's questions is that on the equal terms claim under our LUPA and this court's recent articulation of that test, the comparator test, and Your Honor mentioned the analysis occurs with respect to the purpose of the underlying regulation. The purpose of the underlying regulation here is the county's purpose in preserving agricultural land, the nature, the character, and so on. But the county itself determined what this church is doing on that land is principal bona fide agricultural use. That's the county's words. The county looked at the church's proposed plan and said, yes, that is bona fide agricultural use. I guess, can we circle back to the colloquy earlier with Judge King and I? When you say the county determined that, I was a little bit unclear. Who determined that? Was this the same administrator that you were claiming earlier has the authority to make authoritative comments on behalf of the county? He executed the zoning verification letter, yes, Your Honor. Okay, so this is a letter. This is not just a conversation where someone says something. No, it started as a conversation, as we alleged in paragraph 34 of our complaint back in May of 2020, but it resulted in a zoning verification letter, which is exhibit B to our complaint. Date of February 26th of 2021. So can I ask you, when it comes to the purpose, I guess one thing I'm struggling with here is what is the purpose? So is it the purpose that the county wants this area to be agricultural and generally forbids any non-agricultural uses? Is that the purpose, which I think is what you're saying? But another purpose I could see is why are farm wineries uniquely among agricultural producers allowed to have gatherings when most of them aren't? And I guess one explanation that it occurs to me there is what I understand about farm wineries is that the economics of the Virginia wine industry are such that if they can't sell on site, they're not economically viable. That you basically, if you can't have on-site sales at Virginia wineries, Virginia wineries won't exist. Not really sure that's true. If that's the hypothesis, if that's the purpose we're talking about, I'm not sure that purpose applies in this I mean, I don't, this church wants to have a church. They're willing to have some agriculture in order to have a church, but what they want is to have a church. I don't think you would deny that. That seems obvious from the complaint. And so how is that similar to the purpose of allowing the wineries to have gatherings? As in the wineries won't exist as agricultural entities if you don't let them do this. So your honor, the purpose for this zone and even in the agriculture and arts overlay district, which has a separate articulation of a particular purpose, are both tied strictly to agriculture. That's the root of both the promotion and protection of agricultural nature, agricultural products, resources, and things of that nature, not the sale of alcohol or even the production of alcohol. The district court relied on a particular provision. In the district court's opinion, it cited that there was Virginia code that promoted the sale of the Virginia or the livelihood of the Virginia wine and beer industry. But that's not the Prince William County's code. That was a citation to the state statute. Well, sure, but the state statute, is it aggregate? The state statute limits what the county is even allowed to do, right? There are certain things that state law forbids the county from doing or requires the county to do, right? That's correct, your honor. And so the county can't pretend that those don't exist. That's correct. But even still, your honor, back to the purpose, the purpose and the promotion of agriculture or even in particular wine and beer, what the church was going to produce on his agricultural land was non-alcoholic cider. That is the fruit of agricultural produce. That would be consistent even with the state code's interest of advancing the Virginia wine and beer industry. It just doesn't have alcohol in it. And that's the key, is the church could have- Is that a tenet of the church that you cannot get involved in the production of alcohol? That's correct, your honor. It goes against the articulated religious beliefs of the church, not just to not produce or sell alcohol, but even to be- So you're saying that the bottom line is, in order to build your church, they want you to produce alcohol? With a nuance, your honor. So there is a special use permit in place on the land and the church is working on that, recently received approval for phase one. The church will execute on the special use permit. This is not an attempt to avoid the special use permit. They bought the land because it had a special use permit already in place. But this is to worship and meet on its land as an accessory use while it waits to be able to afford the special use permit. This is not to build an SUP building and then asking the county for permission to not treat it like an SUP or not require that it be compliant with the SUP. This is not about an SUP building. I would note too, your honor, that in the definition section of the relevant code here, it defines religious institution as the religious assembly with its related facility. So the SUP has to do with the building and the things that come with it, the runoff and the drainage and the parking and things like that. It's not about the content of what's happening. It's not about the content of the speech or whether the nature of the live music is religious or not. It's about a compliant building that is in such a way that it still advances and is consistent with the county's legitimate purpose in preserving the agricultural nature of the land. So this is just to answer your honor's question. This isn't to build a church on the land insofar as the church is a building that would be subject to the SUP. This is to use, operate, and worship on its land, just like the farm wineries are able to have Friday, Saturday, and Sunday nights live music in a bonfire. That's what the church wants to do, but it would be religious content. And there would still be bona fide agricultural use, which the county is already determined to be bona fide agricultural use. This isn't a question of what the church wants to do is consistent with the county's interest supporting its zoning code. That's already been determined by the county. This is agriculture. And they could have the liquor license. Thanks. Just one question. So this is just on my mind, I want to ask. So if your understanding is, say, we go through this whole thing that you were just talking about, what remedy would the county have if the church just didn't build an orchard? What if you get an injunction that allows you to do the things that you want to do, and then from the county's perspective, the church literally just didn't build the orchard? So the remedy that the county would have in that situation, I would... Would it forbid the church from meeting because then you're not using it for bona fide agricultural use, and then you don't have any basis to meet on the land? I would assume the county has an enforcement structure. And if there was substantial noncompliance or whatever the relevant legal standard may be for that, they would have an enforcement structure. Thank you. Your Honor, I see that I'm over my time. Sorry, don't you get questions, you go ahead and answer. Judge Lyden, do you have anything? Not right now. Thank you, Judge King. You saved some time. Thank you, Your Honor. Let's see what the county says. Mr. Smith? Good to have you here, sir. Thank you, Your Honor. Good morning, and may it please the court. Alan Smith on behalf of Prince William County, Virginia. I'll begin my remarks by trying to answer the questions the court has already asked. I'm starting with the framework for county government and the zoning ordinance and how it applies. The Board of County Supervisors is the duly elected governing body of Prince William County. They are the legislative body that is elected by the voters of Prince William County. They hire and appoint various officials to enforce their legislative actions. How many supervisors are there? Eight, Your Honor. Eight? That's right. They appoint various officials to enforce their actions, including the zoning ordinance, which is a legislative action. And so, they have appointed a zoning administrator, and she is empowered to issue various decisions and determinations in furtherance of the zoning ordinance and its enforcement. And in this case, she was asked and she provided what is known as a zoning verification. And that document is intended to give a property owner or prospective property owner an understanding of the permitted uses on that property and also what is not permitted. And although the church did not attach their request in the verification, which is found at Joint Appendix 69 through 70, she did restate some of the things that the church had requested. And they had requested verification of their permission or the Was their request ever presented to the district court in any form? Your Honor, the county attempted to introduce various documents, including requests and other determinations related to this matter. The church objected to that and the district court honored the request and did not consider any of the documents. Were this all 12B6? Yes, Your Honor. And the only document that the court did consider was the church had attached a draft of the special use permit to its complaint and the county offered a final, fully approved version of the SEP. Sorry, a special use permit, which the court did consider. So, in this case, the zoning administrator was asked for verification of whether the church could grow and harvest agricultural products on its property. The zoning administrator noted that this was a proposed course of action until the church executed and proceeded with its special use permit. And in the verification letter, the zoning administrator specifically stated that this would not allow any other use of the property. So, the property is limited to the bona fide agricultural use until the church proceeds with execution of its special use permit. So, the zoning administrator was not saying you can do agriculture and anything else that goes along with it. Well, but this is when RLUIPA comes in and says you don't just get, the whole point of RLUIPA is to say zoning administrators don't just get to say whatever they want when it comes to churches, right? Correct, Your Honor. But in this case, if you look at the four corners of the verification, they would have no reasonable expectation that they were being permitted anything other than bona fide agricultural use. Well, but again, no reasonable expectation based on Prince William County, but RLUIPA says the right. And I guess the strongest version of their argument, so, I mean, let me just give you what I think is the strongest version of their argument. You've said they can grow apples and have apple cider and they can have non-alcoholic fruit juice. They can look like a farm, I mean, I guess the strongest version of their argument is as a person who's been to some Virginia farm wineries, they can look identical to a Virginia farm winery in every single respect except one, the product they sell doesn't have alcohol in it, but nothing about the experience. They have a barn and there's a band and there's like animals and there's trees and everything about the experience from the consumer's perspective would be exactly the same, except the product they sell doesn't have alcohol in it. And why does RLUIPA allow you to do that? I guess that's what I think is the strongest version of their argument. I understand their argument and I disagree with it, Your Honor, because I don't think they are in all relevant respects the same as a Virginia farm winery or a limited license brewery. They are not by definition and as a matter of law an agricultural use. They are not inherently agricultural. Nothing's inherently agriculture. I guess my point is if they were to do that, I guess if they were to do that, if they were to create something that's materially identical to one of the dozens of wineries in the Blue Ridge Mountains, it looks exactly the same. I don't know, there's a cane vineyard, if they look exactly the same as cane vineyard, but the only difference is that the stuff they sell doesn't have alcohol in it. What possible interest would the county have that RLUIPA allows in not allowing them to do that? Because, Your Honor, they don't have to continue the use. As you noted, they could- They don't have to what? They don't have to continue that use. It's permitted for agricultural use, but it's a church. They're not legally required to conduct agricultural activities. They could stop at any time. A farm winery and a limited licensed brewery has no choice. By law, they must conduct agricultural activities. They are, as a matter of law, an agricultural activity because- What do you mean by a law they have to do it? Are you telling me that a farm winery couldn't just stop producing wine? They could. There would no longer be a farm winery. At which point? Okay, so at that point, they're not allowed to have- And then at that point, they're not allowed to have gatherings. Yes, Your Honor, because by definition- For you all to be convinced that they did stop. If they're having a drought or something and not to do something this year. Your Honor, I think that would be a fact specific question. There is a period of time under the zoning ordinance in which someone can discontinue a use and still preserve that use going forward, but it's very fact specific. And so it'd be difficult to answer that in the abstract right now, Your Honor. Are you all saying that in order to be a church, they have to be a bar or a winery? No, Your Honor. The church knows what it needs to do to become a fully compliant church, and that is proceed with the SUP requirements. We understand that there are financial issues that are presenting it, doing so at this point. But as they've pledged, they have alternative locations, which they have used and they can continue to use. And that's not a reason for them to be allowed out of the SUP, because it's not about just the facility. It's not about a building. It's about a non-agricultural assembly. So let me take a step back and ask you the flip side of the question I asked the Appellants Council. What is the reason, to the extent there is a publicly available reason, why do we allow farm wine? Why does Prince William County allow farm wineries and farm breweries or whatever that's called? Why do they get together when other agricultural uses don't? Your Honor, I think you've already answered that in part with part of your question earlier, and that is Virginia is a Dillon rule state. The county is limited in the authority that it has, specifically to the zoning ordinance. And particularly in the case of farm wineries and limited licensed breweries, the county is very limited in how it can regulate the activities that occur at farm wineries and limited licensed breweries. And is that the same problem with the agro? So my understanding is the other gatherings are allowed for these agro-tourism activities. Is the county also limited by Virginia law in its ability to regulate those? Yes, Your Honor. It's a bit confusing. There are three separate statutes which regulate the different uses. There is a statute that addresses farm wineries, another one that addresses limited licensed breweries, and another one that addresses agro-tourism activities. And each one, they're very similar, but each one has slight differences. And what the Virginia General Assembly has said is that localities are limited in how they can regulate each one of those different types of uses. And in particular, if a locality such as it has to take into consideration the economic impact on the winery or the brewery, the agricultural nature of the activity that the brewery or the winery wants to engage in, and usual and customary activities and events at a farm winery or a limited licensed brewery must be permitted unless they have a substantial impact on the health, safety, and public welfare, which is a relatively high standard for the county to meet. And so because of that, the county, like most other localities, permits farm wineries and limited licensed breweries by right in agricultural zoning districts and also permits various activities such as parties, meetings, weddings. And it's because those activities help preserve and serve the agricultural purpose of the agricultural zoning district. They help preserve the economic vitality of the Virginia farm winery and limited licensed brewery industry, which also helps preserve agricultural land and agricultural areas and promote agricultural uses more generally, which the county argues are very rational and reasonable reasons for underlying these zoning regulations. Another issue that has been raised is what the church is proposing is, as the court has noted, essentially a church. They've alluded to having multiple services on Sunday mornings like other churches do. That is not an agritourism activity. It is not an inherently rural or agricultural activity to conduct religious services on an agricultural piece of property. I mean, in fairness, having a 200-person wedding at a barn at a winery is not an inherently agricultural activity either. Your Honor, I would disagree to the extent that that gathering, that meeting, that party is serving the agricultural purpose of helping to preserve the wine and beer industry on farms and helping to preserve agricultural land. I think it is an inherently agricultural use because otherwise those industries and those areas are going to be- I just mean it's at least a second-order effect. It's not about actually growing the product. It's about by having the event, you make it more likely that the land won't become something else, which makes it more likely that people will continue to grow stuff on the land next to the barn. I would agree with that, Your Honor. Your Honor, they haven't been treated any differently than any other non-agricultural assembly use. There are 35 uses in the agricultural zoning district that require a special use permit, including at least a dozen other non-agricultural assembly and institutional uses that all require the same special use permit. What's your position on the applicability, if any, of the Kanan Church decision for this court earlier this year? I think that the Kanan decision is directly on point on this case. I think the court has decided and established the applicable standard. That is, the court is going to look for a comparator that is similarly situated with regard to the regulation at issue. I think that is a very similar test to what the district court applied in this case. That was a comparator that is similarly situated with respect to the purpose of the underlying regulation. Is there any way they can get around the Kanan Church case? No, Your Honor. I don't think there is. I think it is directly on point. I think it applies to both the as-applied and the facial challenge. I think it dooms their equal-terms claim, Your Honor. What about the other claim? Your Honor, I think the other claims are going to fail for a variety of reasons. If the equal-terms claim goes down the tubes and the rest of them fall away, is that what you're saying? I think they will all fail for various reasons, Your Honor. So there are other reasons for those? Yes, Your Honor. Kanan Church doesn't get rid of all the claims? No, Your Honor. It does not. For example, the non-discrimination claim. When you said it's on point, you're talking about the equal-terms claim. Yes, Your Honor. It is on point for the equal-terms claim. The other claims require various other legal precedents to be applied. For example, the non-discrimination claim, they are required to demonstrate that it's motivated at least in part by discriminatory intent, which the complaint fails to do, as the district court noted. The district court noted that discriminatory intent can be inferred, but not on the facts. Well, she didn't note. She ruled, didn't she? She did more than note. She ruled. Yes, Your Honor. I think, yeah, that's a stronger term. If I were you, I'd use that. At your standpoint, I'm going to tell you what to do. But a note is kind of an aside, might be dicta. Yes, Your Honor. She noted it, and she granted the county's motion to dismiss, finding that they failed to state a non-discrimination claim, because there was no discriminatory intent alleged sufficiently in the complaint that could not be inferred from the facts alleged. The zoning administrator- Well, did she decide all the claims? Yes, Your Honor. She did. She dismissed all six claims. And you're saying that the Kane and Church case controls all six claims, or not? I don't think it controls all six claims, Your Honor, because, as I recall, the Kane and Christian Church dealt with a substantial burden claim, an equal terms claim, and a First Amendment free exercise claim. I don't recall that it dealt with the 14th Amendment equal protection claim, the First Amendment freedom of assembly claim, or a RLUIPA non-discrimination claim. They sort of threw the book at you. Yes, Your Honor. It was a comprehensive complaint. Right. So you don't have the Kane and Church that can get you as far as you want to go? Unfortunately, no, Your Honor. It doesn't address- When you said earlier that it was on point, in your view, on point to a limited extent. Yes, Your Honor. I apologize. It's on point as to the equal terms claim, and we believe this on that claim. But on the other claims, I can't say that it is on point in the same regard. But you're saying Judge Brinkema got them right. Yes, Your Honor. Judge Brinkema was correct in dismissing all six. She heard oral argument in the case, didn't she? Yes, she did, Your Honor. Is that kind of unique in the Eastern District of Virginia that they would conduct an oral argument on a 12B6 motion? I don't know if it's unique, Your Honor. I believe that the court does hear oral argument on some, but also decides it on the papers in other cases. I've only had one other experience on a similar motion, Your Honor, and it was withdrawn prior to oral argument. On the non-discrimination claim, there was no evidence in the zoning administrator's verification letter of any sort of animus or hostility religion, as Judge Brinkema held. The letter states the law, and they have not been treated differently than any similarly situated comparator. And for that reason, we believe that the non-discrimination claim fails. Turning to the substantial burden claim, as the Church has stated repeatedly, it was fully aware of the special use permit and its requirements when it purchased the property in 2018. And it did so purposely because of the special use permit, because it allowed a religious institution. The Church would not have to go through its own process to get a special use permit. So to put that in the language of the statute, it would be that any burden is not imposed by Prince William County. It's imposed by the Church's decision to acquire the property, knowing the restrictions on it? Yes, Your Honor. And we believe that this case is like Andon in that respect, in that the property owner bought into the property knowing that there were requirements or an approval that it did not have or it had not yet met, and would have to do so before it could engage in the use that it desired. In this case, it was a self-imposed hardship. And this Court has held previously that generally a self-imposed hardship... You're arguing estoppel? I'm sorry, Your Honor? You're arguing some kind of estoppel principle? No, Your Honor. I think it's just the analysis under the substantial burden framework that this Court has adopted, in that generally the Court has said if it's a self-imposed hardship, that is not a burden imposed by the locality... And that'd be resolved on a 12B6, or would you need discovery? I don't think you need discovery, Your Honor, because in this case, the Church has pled... Here you didn't have any discovery, and you didn't even get everything before the Court you wanted before the Court. That is correct, Your Honor, on both counts. There was no discovery, and the Court only accepted the special use permit that the County offered. The judge may have saved you by not letting those documents in, because they would have had to write, or should have had to write, if you did that, to open up everything. And then you would have been abandoning the 12B6. Well, Your Honor, our argument, which we did not appeal to this Court, was that these were documents that had been either... Had been provided by the Church previously, their requests, or had been issued by the County specifically at the Church's request. But that doesn't matter for 12B6. I guess the problem that troubles me more about 12B6 is to the extent their complaint references documents. I think we have cases saying, if you reference documents in the complaint, you're incorporating them into the complaint. I believe that is the case law in this circuit, Your Honor. I don't recall other documents they've referred to in this case that were material to this case. They attached a copy of the staff report that was produced by County staff in 2013, when the prior owner was seeking approval of the special use permit. And then as an attachment to that were the draft special use permit conditions that were proposed at the time for the Board to adopt. Turning back to the substantial burden claim, I think this Court has generally held that where it is a self-imposed hardship by the party, this Court will not find a substantial burden imposed by the government. Because if the Court did so, it would essentially be allowing a party to circumvent a generally applicable government regulation by a situation where it knew it was a regulation requirement. But how do you know substantial burden hardship self-imposed without conduct of discovery? Well, Your Honor, in this case, I think the Church has pled and stated in its brief that it clearly bought the property because it had a special use permit, because it would not have to go through that process. And it specifically paid more for this property because it had a special use permit. Your Honor, I see that my time is almost, excuse me, my time is over. In closing, I would just ask that the Court affirm the District Court's decision, unless there are any further questions from the Court. Anything else? Thank you very much, Mr. Smith. Mr. Cisney, you've saved some time. Thank you, Your Honor. If I could make a couple of brief points. Again, the Court alluded to it, this was decided on a 12B6 without the benefit of any discovery, any evidence, any real evidence or testing of evidence. But you don't disagree with Mr. Smith's assertion that your own complaint says you bought this land knowing there was a special use permit. No, I certainly concede that the Church bought this land because it had a special use permit. And knowing that it was zoned for agriculture. The Church bought this land knowing it was a... Correct. And that the Church to use a substantial burden test language, a reasonable expectation that it could use its land until the SUP executed, could use it for agricultural purposes, which is what it applied for and is attempting to do. Sure. But what was the basis of the Church's reasonable understanding that you could be treated like a farm winery even though you don't intend to produce alcohol? In May of 2020, when the pastor spoke with the zoning administrator and said, how do we get that same beneficial treatment? And she said, go this route. And so the Church began going that route. So I... But do you agree that there's no letter that says that, there's no decision of the Prince William County Supervisors that says that it's an oral conversation with the zoning administrator? Your Honor, at this stage, all of my well-planned allegations are to be presented... But your well-planned allegations are, it was an oral conversation. The well-planned allegations, that was... That's correct. That's correct. So you've said it in your complaint, we have to take it as true. That's correct, Your Honor. And it's paragraph 34 of our complaint. And any also wouldn't ordinarily be labor standards to the court, but to affirm the dismissal and this de novo review, the court would have to conclude that there are no set of facts that could arise from these allegations. Well, that's not true. That's commonly standard that was overruled in Twombly and Iqbal. Okay, Your Honor. But even still, all reasonable inferences must still be drawn in the plaintiff's favor. And so the discussion of the Kenan Christian case, I'd like to turn to briefly, I'd like to just point out that ended on the district court's docket for four years. There was discovery, discovery disputes, the whole nine yards, and it was decided on a rule 56 motion for summary judgment. We're here again on a 12B6. And on just a quick point in response to one of counsel's comments, the church meeting on its land in the barn, that's an accessory. The accessory use doesn't have to be agriculture. Just like in the court mentioned, comparing it to bonfire at the winery, whether that is an interpretational question of whether that promotes the wine industry or not, regardless, an accessory use, just like the wedding would be. But what do you say to his argument that, I mean, I don't know, maybe this means the county has a, sorry, maybe it means the church has a reluctant claim against the state. I mean, I also understood part of what your friend on the other side to say is Virginia law doesn't let us forbid gatherings at farm wineries because Virginia law requires what you already said. So what do you say in response to, to the extent that we give special treatment to farm wineries, it is because Virginia law requires us to, not even necessarily because we would choose to do that if it was up to us. I believe that all Virginia law requires of Prince William County is that it can't impose a special use permit on a winery. I thought your friend on the other side represented that we can read the Virginia code, but he represented that what it says is, if you're going to restrict the things that farm wineries can do, you have to show that it will impose a real and substantial harm, blah, blah, blah. I wouldn't take issue with that, Your Honor, but that's not what we have going on right here. Right here we have at the pleading stage, allegation that, and it's arguing, that they don't want to treat the church the same as the farm winery. But the reason or the purpose of the county zoning code, even going to the rational basis scrutiny, it is, and I contend it's irrational to require a church to get an ABC license to sell non-alcoholic wine in order to receive the same beneficial treatment as a farm winery. That's not in furtherance of a rational, rationally related to a legitimate state interest. The legitimate government interest here is agriculture. The church is doing that. The county itself determined that it was doing that. The county zoning administrator does have the authority, and it's delegated with the authority to interpret, administer, and enforce the provisions of this chapter, Chapter 32, I believe. So the zoning administrator has that kind of authority. And for these reasons, Your Honor, seeing my time has expired, unless the court has more questions, I would respectfully ask the court to remand. Thank you very much, sir. Good to have you here and appreciate your arguments and your submissions. Thank you, Your Honor. And if we could do so, we'd come down at this point and shake hands with the council and Greek council and thank you personally, but we're suspended that procedure, which this court used for 75 or 100 years. We suspended it for the pandemic, and next time you're here, we'll be able to do that. Good to have you here. Thank you, Your Honor. And with that said, we'll take a matter under advisement and Madam Clerk will call the next case.
judges: Robert B. King, Toby J. Heytens, Sherri A. Lydon